## Stibbs v. Agner & Co.

1. **Landlord and Tenant:** INJUNCTION IN AID OF LANDLORD'S LIEN: FACTS NOT WARRANTING: DISCRETION OF TRIAL COURT: While the granting as well as the dissolving of an injunction rests much in the discretion of the court, and while such discretion will not be interfered with by the appellate court, except where there is a manifest abuse of discretion or a mistake of law, yet, in this case, where the injunction was granted to restrain the removal of goods from a store-room, for the purpose of preserving plaintiff's alleged lien for rent, but it appears that between plaintiff and defendants the relation of landlord and tenant never existed, (for the facts see opinion,) and that defendants held the store room only under an assignment of the lease from plaintiff, which assignment the landlord refused to recognize, and that defendants had more than paid plaintiff for the time they had occupied under the assignment, *held* that the injunction should have been dissolved upon interlocutory motion, and that it was reversible error to overrule the motion and to continue the injunction to the hearing.

*Appeal from Linn Circuit Court.*

TUESDAY, DECEMBER 9.

ACTION for an injunction to prevent the removal of a stock of goods from a certain store occupied by the defendants in the city of Cedar Rapids. The action is brought upon the theory that the plaintiff has a landlord's lien upon the stock, and that the defendants threaten to remove the stock and deprive him of his lien, which he needs for security for the payment of rent. A writ of injunction having been issued and served, the defendants filed an answer, denying that plaintiff has a landlord's lien. They also filed a motion to dissolve the injunction. The court overruled the motion and continued the injunction to the hearing. The defendants appealed.

*Stoneman, Rickel & Eastman,* for appellants.

*Mills & Keeler,* for appellee.

ADAMS, J.—It was said in *Fuson v. Conn. Gen. Life Ins.*

*Co.*, 53 Iowa, 611, that " the granting as well as the dissolving of an injunction rests much in the discretion of the court, and such discretion will not be controlled by the appellate court, except where there is a manifest abuse of discretion or mistake of law." In support of this rule were cited Hil. Inj., 107; *Johnson v. Allen*, 35 Ga., 252; *Howell v. Lee*, 36 Id., 76; *De Godey v. Godey*, 39 Cal., 157. The plaintiff relies upon this rule as being sufficient to sustain the ruling of the court. But upon no theory of the plaintiff's case, taking the averments of his petition as a whole, and the evidence adduced in their support, can we see how the ruling can be sustained. The difficulty with which the plaintiff has to contend is fundamental. He not only, as it appears to us, had nothing which he could lease, but he never made even a pretended lease or sub-lease. The owner of the building is one Calder. When the defendants put their stock of goods into it, they did so under the supposition that they had become, or were to become, the assignees of a lease theretofore made to other parties by Calder. Discovering, as they thought they did, and as is now conceded, that they had not become the assignees of the lease, and could not acquire it, they hired another store, and were about to move into it. It is not material for the defendants to show that they did not become assignees of the lease. If they had done so, and had taken possession under it, such fact would not aid the plaintiff. The defendants in such case would have been tenants of Calder, and, if any one would have had a landlord's lien upon the goods for rent, it would have been the landlord, Calder. The plaintiff's counsel, at the present stage of the case, appreciate this fact, and in argument expressly deny that the defendants became assignees of the lease. Their theory now is that the plaintiff is a tenant of Calder, and has sublet the premises to the defendants.

It is not to be denied that there were certain negotiations concerning the premises between the plaintiff and defendants, and a supposed transaction sufficient to give the defendants a

right to occupy the premises; but the business, so far as the plaintiff is concerned, seems to have been conducted with the crudest conception of its legal character, and with unaccountable looseness. The lease from Calder was made to the firm of Stibbs & Martell, composed, as we infer, of the plaintiff, H. B. Stibbs, and one P. Martell. They occupied under the lease, as it appears, about one year. Stibbs then assigned his interest to Martell, and, as we infer, withdrew from the firm, leaving Martell in the business. Martell executed chattel mortgages upon the stock to different creditors, and to the plaintiff, among others. The mortgagees after a while took possession of the stock and store, and sold the goods. To induce Calder not to interfere by the assertion of his lien for rent, they gave him an obligation whereby they became personally liable to him for the payment of the rent. The plaintiff then formed the plan of finding some one who would take an assignment of the lease, and enable the mortgagees to become discharged from further liability on their obligation. He had come into possession of the lease in some way, whether rightfully or not it does not very clearly appear; but it is shown that Martell never made any assignment of it, and, so far as we can discover, he is still the owner of it.

The plaintiff, as one of the mortgagees, and with, perhaps, some authority from the other mortgagees, seems to have become the active man in closing out the stock under the mortgages. What his precise powers and duties were we cannot ascertain. The evidence upon the point is exceedingly meager. He describes himself in his petition as "custodian;" but, as that word has no special legal import, we cannot take judicial notice of the powers, if any, conferred by his appointment as custodian. It is certain, however, that he claimed the right to make an assignment of the lease, and he made an indorsement thereon in these words: "For value received, I hereby transfer and assign all of Stibbs & Martell's interest in and to the within lease to Wm. Agner & Co.," and signed the same "H. B. STIBBS, custodian

for P. Martell, mortgagees." What he meant by the description of himself appended to his name, we are not entirely certain, but it seems probable that he intended to describe himself as custodian of the lease for P. Martell and his mortgagees. This view, we think, would be as favorable as any for the plaintiff, and we will assume that it is correct. But the assignment, so far as the body of it is concerned, purported to carry only the interest of the firm of Stibbs & Martell, and the evidence shows, as we have stated, that Stibbs assigned his interest to Martell, and, this being so, there was no interest left in the firm to be assigned.

Whether the assignment purported to convey Martell's interest it is not important to determine. There is no pretense that Stibbs had authority to act for Martell. It is, to be sure, claimed in argument that Stibbs had authority to act for Martell's mortgagees. But it is not shown that he had, neither is it shown that the mortgagees were the owners of the lease, nor does the assignment, so far as the body of it is concerned, purport to convey any interest held by them. What is more, if we should put any construction upon the assignment which the plaintiff might ask, we are unable to see how it would aid him to maintain this action. An assignment, whether made by the firm of Stibbs & Martell, or by Martell as an individual, or by Martell's mortgagees, would not create an interest in the plaintiff so as to give him a right to a lien. This difficulty the plaintiff has come to appreciate, and he is contending now that he sublet to the defendants. His theory is, as we understand, that, having attempted to make an assignment of the lease, and such assignment having no validity, the defendants became subtenants under him, and that, too, for the remainder of the term. But this position cannot be sustained. The understanding of the defendants was that they were to become assignees of the lease, and not sublessees. The plaintiff declares in his petition that he " assigned to them all the right, title and interest of Stibbs & Martell in and to the said lease, as shown by

the assignment in writing on the back of said lease;" and that "the defendants accepted the building under the terms of the original lease, and the lease itself." In his testimony he said: "I never made any written lease with the defendants, Agner & Co. *My contract was the assignment referred to in the papers.*" In an affidavit he said that his proposition to the defendants was to "assume the lease for the unexpired term," and, "that on April 24, 1884, the defendants wrote to this plaintiff a letter, whereby they recite the terms of said written lease between the landlord and mortgagor, P. Martell, and agreeing to take the same, being the same lease attached to the plaintiff's petition." Two days later the plaintiff answered the letter in these words: "GENTS: Your favor of the twenty-fourth inst. received, accepting proposition to transfer lease of store-room. As an earnest of good faith on your part, please send us $100, to apply as one month's rent, and we will *agree to transfer lease.*" The defendants, in sending money to pay rent, demanded that plaintiff should procure a receipt from the lessor, Calder. One William Green, in an affidavit, shows that he was present when the plaintiff's proposition was made to the defendants, and he says that the proposition was "that plaintiff would transfer the lease to them, and give them possession June 1, 1884, for the remaining term of said lease, and on no other terms whatever." We find no evidence to the contrary.

We regard it, then, as proven beyond dispute, that what the defendants contracted for was an assignment of the lease. It was their right to have that or nothing. Under an assignment, they would become tenants of Calder, and could pay, as their safety required, directly to him. But a trouble arose. The lease was not assignable without Calder's consent. The defendants, as we infer, were strangers in Cedar Rapids. At all events, Calder's consent could not be obtained. The plaintiff, in his testimony, says: "Mr. Calder was never asked to recognize anybody else as his tenants until after the lease had been transferred to Wm. Agner & Co.; he then

declined to accept them as his tenants and relieve me or the mortgagees." The relation of a subtenancy was precisely what both plaintiff and defendant were trying to provide against. When the defendants found that they had acquired no valid assignment of the lease, and could obtain none, it was unquestionably their right to vacate the premises and take their goods with them. They had paid for all the time they had occupied, and more too.

The injunction, we think, should have been dissolved.

REVERSED.